## HORATIO G. CILLEY *versus* AMOS JENNESS.

Where a deputy sheriff attached property upon two writs, in favor of the same creditor, returning one attachment as subject the other, and, after judgment recovered, was sued by the creditor for not delivering to him the property attached, it was held, that the deputy sheriff was not answerable for such part of the property as did not in fact belong to the debtor, nor for such part as was by law exempt from attachment, unless the owners consented to the attachment of it.

It was also held, that potatoes and other perishable articles are subject to attachment, and must either be preserved specifically, or, having been kept till likely to decay, must be sold, and their net value restored.

The creditor declared, in his first count, on the writ first served; and, in that count, admitted that part of the property had been returned and sold on the execution, and as the return on the execution corresponded with this count, he was not permitted under his second count on the second writ to recover for the same property, unless he showed fraud or mistake in levying the first execution; though he offered to show, that this part of the property thus received and sold on the first execution, was not the identical property attached, and was likewise of less value.

THIS was an action on the case. The declaration contained two counts.

One alleged, that the defendant, being a deputy sheriff, received, on the 30th of March, A. D. 1813, a writ in favor of the plaintiff against *Moses Barnard;* that he attached thereon the property of *Barnard* to the value of $643; that the property consisted of beef, potatoes, furniture, &c.; and that, with the exception of certain articles enumerated as redelivered and sold on the plaintiff's execution, the property attached had not been accounted for by the defendant.

The other count alleged, that a second writ on a different cause of action between the plaintiff and *Barnard,* was also delivered the defendant at a subsequent time, viz. July 25th, 1813; that the same property was attached on this writ, subject to the former attachment; that no part of the property had been accounted for on the second execution, and that the plaintiff had thus been disabled from satisfying the full amount of his two judgments.

At the trial here, in February, A. D. 1819, on the general issue, it was agreed that the two writs against *Barnard* had

Cilley
*vs.*
Jenness.

been duly prosecuted to judgment, and the articles attached upon them seasonably demanded of the defendant.

The plaintiff then proved that on his demand only a portion of the articles were returned by the defendant, that some of those had been injured by negligence, and that others were delivered by him to the plaintiff, and sold and endorsed on the first execution, which, though nominally the same as those attached, were in reality different and of inferior value.

On the contrary the defendant proved, that a portion of the articles, not returned, did not at the time of the attachment belong to the debtor, that others were by law exempt from attachment, and that some, consisting of potatoes and produce of a perishable character, were suffered to remain in the possession of the debtor.

The court thereupon directed the jury, that the defendant was not answerable where articles of the same species with those attached had been delivered and accepted and sold on the first execution, unless they were accepted through fraud or misrepresentation on the part of the defendant, and that he was not answerable for property, either belonging to third persons or exempt from attachment, unless the owners consented to the attachment; but that he was answerable for all the residue of the property, whether perishable or otherwise, and for all damage occasioned by his neglect towards the articles returned.

The jury found a verdict for the plaintiff for $234 53, which it was agreed should be set aside, affirmed, or amended according to the opinion of the court after further advisement.

*Mason*, counsel for the original plaintiff.

*Butler & J. Smith*, for the defendant.

WOODBURY, J.   In this case we shall first consider, whether the defendant was answerable for such articles as had been attached and not returned to the plaintiff; but, in the place of which articles, others of the same species had been returned, accepted, and sold on the first execution.

There can be no doubt of the general principle, that a deputy sheriff must be deemed a bailee of all articles attached, and must return the same which were attached, unless discharged by such accidents as excuse a return in this species of bailment, or unless discharged by the person to whom he is bound to account.(1)

(1) 6 John. 9.–9 John. 381.—9 Mass. Rep. 537.

In the present case we think he has been discharged by the creditor, to whom he was bound to account. The creditor, on a demand of the articles attached, received from the defendant a number of articles nominally the same. The natural presumption is, that they were returned as a substitute for those attached, and that they would not have been received and sold on the first execution, unless they were accepted as a substitute. Such an acceptance, when not caused by fraud or mistake, of which there was here no evidence, ought to estop the creditor.(2)

(2) 1 Mass. Rep. 101, Everett vs. Gray et al.–13 John. 219.—2 John. Ca. 424.

A contrary view of it would subject the deputy sheriff to a total loss of those articles, and would enable the creditor to obtain, on his execution, both the amount for which they sold, and, also, the amount of the identical articles attached.

If the articles, delivered as a substitute, belonged to the debtor, and not to the deputy sheriff, it would still be oppressive to seize and sell them as a substitute, and at the same time hold the deputy answerable for the original articles.

Indeed, it seems doubtful, whether a creditor can, in good faith, seize and sell other property of the debtor, until what he holds as a pledge or as an attachment has first been appropriated in payment. 8 *Mass. Rep.* 150.—13 *John.* 517, *Millar vs. Starks.*—11 *Mass. Rep.* 317, *Lyman vs. Lyman et al.*—13 *Mass. Rep.* 75.—*Sed.* 14 *Mass. Rep.* 156.

We were inclined to think at the trial, also, and our impressions are still similar, that the creditor, under his present declaration, is estopped to recover for these articles, which, in his first count, he admits have been returned.

This is not on the grounds taken in *Jackson vs. Stetson & Ux.*(3) that a party cannot make different hypothetical statements of one cause of action, or of a defence to one suit, without having one statement considered as an admission of facts

(3) 15 Mass. Rep. 48.

12

Cilley
*vs.*
Jenness.

(1) Willes 380.
—2 East 426.
5 East 463.—
5 Bac. Ab. 448,
" Pleadings."—
5 Taunton 228,
Harmington et
al. vs. McMor-
ison.—2 John.
437.—1 Mar-
shall Rep. 33.

in the trial of another ; for that, we apprehend, is contrary to immemorial practice as well as authority ;(1) but it is on the ground, that the two counts in this declaration are manifestly for two distinct causes of action, and that the defendant, not being liable for these articles but once, and having accounted for them on the first execution, as is admitted in the first count, cannot be charged for them a second time in the second count on a second writ and execution.

(2) Whiting
vs. Bradley,
ante.

In respect to the articles attached, which proved not to be the property of the debtor, we think the defendant cannot be answerable ; because the creditor has no right to satisfy his judgment on the estate of third persons.(2)

(3) 12 Mass.
Rep. 163.—4
ditto 498, Ful-
ler vs. Holden.
—13 ditto 225.

The defendant committed a trespsss in attaching it, was liable to return or pay for it to the owner, unless he assented to the attachment, and, whether either payment or a return had yet been made, the creditor's rights remained unaugmented.(3)

On a similar principle,the jury were directed not to charge the defendant for those articles, which, by law, were exempted from attachment. 1 *N. H. Laws,* 157.—9 *John.* 99.— 13 *Mass. Rep.* 86.—15 *do.* 170, 205.

As regards the perishable property, the first enquiry is, whether articles of that character are subject to attachment. At common law, they probably were not subject to distress. *Bac. Ab. " Distress."*—2 *Ld. Ray.* 1426.—7 *Mass. Rep.* 123. But we dissent from the opinion, in 6 *Mass. Rep.* 143, that they are not here subject to attachment.

Many articles, such " as an horse in an inn, sacks of corn or meal in a mill," &c. were at common law exempt from distress, which were always here subject to attachment. *Bac. Ab. " Distress,"* B.—*Co. Litt.* 47.—*Willes* 515.—*Cro. Eliz.* 550.

By the 11th George II. a distress can now be made in England of perishable articles ; and the only principle, which exempted them at common law, was the necessity of their removal and their liability to suffer by removal. See also 2d William III. *Gilb. on Distresses,* 35.

But even at common law ripe grain in the field could be seized on *execution.*(1) And hay in a barn, has long been held liable to attachment.(2)

Indeed, *Parsons, Ch. J.* admits, " that goods perishable in " their nature may be attached, if the mere attachment and " removal of them will not tend to destroy them, or to hasten " their ruin."(3)

Such would not have been the tendency of a removal of potatoes and beef at the time these were taken ; and consequently the defendant was bound to attach them. It seems to follow, that if the defendant was bound to attach and did attach them, he ought to account for them.

But the argument is, that, however carefully these articles might have been managed, they would, from their decaying nature, have become totally worthless long before they were demanded by the plaintiff.

Our statutes make no provision on this subject ; and the length of time is so short at common law, between the seizure and sale of property on execution, that the question would seldom or never arise as to its natural decay. The only rule in relation to distresses of dead property is, that it be sheltered in a pound covert.(4) But here, occasionally, a year or two elapses between an attachment and judgment. The debtor does not always obtain receipters, and then, if the property is not sold by consent of all concerned, it remains in the possession of the sheriff ; and, if perishable, is sold in the exercise of his own discretion, or permitted to become worthless by natural decay.

The question therefore recurs, whether, without wandering* into the province of legislation, we can and ought to hold the sheriff liable for this description of property after such a lapse of time that in the course of nature it would perish.

We are inclined to think, that, on the strength of certain analogies between his situation and the situation of other bailees, but more particularly between his condition and the practice under like circumstances in courts of admiralty, we can hold him liable ; and, as his liability will cause to him

Cilley
*vs.*
Jenness.

(1) Tidd 917.
—2 John 418.
7 Mass. Rep.
34.
(2) 11 Mass.
Rep. 184.
(3) 7 Mass.
Rep. 180.

(4) Gilb. on
Distresses 51.

* 16 Mass. Rep. 298.

Cilley
*vs.*
Jenness.

neither hardship nor inconvenience, that we ought to hold him liable.

If, when the articles attached are perishable, the possession of the sheriff could be considered like that species of bailment called a *mutuum*, he would be liable to return their value, or other articles of a similar quality. *5 John.* 350.—10 *John.* 287.—13 *John.* 358.—1 *Domat.* 132.—*Jones on B.* 89.—3 *Bl. Com.* 404.—*Justin. In. b.* 2 *t.* 1 *s.* 25.— And " if they perish," says *Germaine*, " it is at the jeopardy" of the bailee. *Doctor and Student, Dialogue* 2, *Ch.* 38.

Such bailments usually exist concerning grain, fruits, liquors, &c. which are perishable ; and if the nature of the articles, in the absence of express contract, always determined the character of the bailment, the sheriff might on this analogy be charged for the value of these articles, but as a depositary be permitted to restore *in specie* such other articles as were not perishable.

But we prefer to leave the various liabilities of his bailment to be settled as necessity requires ; and, therefore, in charging him for articles of this description, rely principally upon the practice in the courts of admiralty and upon the obvious reasonableness of such a rule.

In those courts, property when libelled, is like property attached among us, taken into the custody of the law as security for the claims against the owners.

If perishable, the marshal, who there seizes it by a special mandate from the court, can by a like mandate sell it ; and he is held accountable for only the net proceeds.(1)

(1) 4 Cranch 15.

Here, as the sheriff seizes it under a general precept, it seems reasonable to permit and require him under the same precept to sell the property, whenever its further detention would expose it to ruin, and thus defeat the very object of the attachment. This course subjects him to no inconvenience and is most beneficial to both creditor and debtor.

We hold, therefore, that if judgment be obtained before such property is likely to decay, the sheriff ought to restore it specifically ; but if not demanded of him before

Cilley
*vs.*
Jenness.

its sound preservation becomes endangered, he ought fairly to expose it to public sale and account for only the net proceeds.

Here he permitted the debtor to consume the property, and consequently was made answerable for its value.

*Judgment on the verdict.*