Keeler
v.
Bartine.

## KEELER *vs.* BARTINE.

Where a note was given for the payment of a sum of money by two individuals, and the payee endorsed it for the accommodation of the makers, and subsequently another person also endorsed it for the accommodation of the makers, and a judgment was obtained upon the note against the last endorser, and it was then agreed between the makers and the endorsers that each should pay *one fourth* of the judgment, and that neither party should look to the other for any part so agreed to be paid by him; and the *second endorser,* in pursuance of such agreement, paid one fourth of the judgment, and brought his suit against the *first endorser* for moneys paid upon the note *it was held,* that he was entitled to sustain his action, the agreement being without consideration, and therefore not obligatory.

The acknowledgment of liability by the *first endorser,* and his agreement to pay one fourth of the note, being subsequent to a suit against him by the holders of the note, and judgment obtained therein *after contestation,* IT WAS HELD, that in the suit by the *second endorser,* the jury were warranted in finding a demand of payment of the makers and notice of dishonor to the defendant; or that the acknowledgment of liability was made with a full knowledge of *laches,* if any existed.

Where, upon the execution of a *voluntary assignment* by the makers of a note for the benefit of their creditors, the *second endorser* of the note executed a *release* to the makers, and *subsequently* became fixed with the payment of the note, *it was held,* that, the release having been executed before the maturity of the note, the second endorser was not barred by it from maintaining his action either against the makers or first endorser.

Where a plaintiff declares in one count *upon a promissory note,* and in another *for moneys paid* and after a plea of *actio non accrevit infra,* &c. to the count upon the note, enters a *nolle prosequi* as to such count, such discontinuance is no admission of the truth of the plea; its only effect is to strike the count and the pleadings applicable to it from the record.

ERROR from the superior court of the city of New-York. Bartine brought an action of *assumpsit* against Keeler, in September, 1826, and declared against him as the *endorser* of a promissory note, made by a firm under the name of *Seaman & Cooper,* for $950, bearing date 19th September, 1814, payable to the defendant or order, 60 days after date. The declaration also contained a count for money lent, paid, laid out, &c. and a third count on a *insimul computassent.* 'The defendant pleaded, 1. *Non-assumpsit* : 2. *Actio non accrevit,* as to first count; 3. *Non-assumpsit, infra,* &c. as to second and

third counts ; and 4. An *insolvent discharge*, exempting the
body of the defendant from imprisonment, granted 4th Janu-
ary, 1820. The plaintiff replied, taking issue upon the three
first pleas, and alleging a new promise, in answer to the fourth
plea, to which the defendant rejoined, denying such promise.
The plaintiff entered a *nolle prosequi* as to the first count of
the declaration. The cause was tried in January, 1832, in
the superior court of the city of New-York. The plaintiff
produced the note set forth in the first count of the declara-
tion. It had the names of the *defendant*, of the *plaintiff*, and
of *Weed & Doremus* endorsed upon it. Weed testified that
the firm of Weed & Doremus endorsed the note for the *accom-
modation* of Seaman & Cooper, and were obliged to pay it
when it came to maturity ; that *suits* were commenced against
*Keeler* and *Bartine* respectively, and *after judgments obtained*,
an arrangement was made by them with Seaman, Cooper,
Keeler and Bartine, by which the four last named persons
agreed to settle the amount of the judgment, each paying
*one fourth* of it ; and that in pursuance of such arrangement,
Bartine gave two notes to the firm of Weed & Doremus, bear-
ing date 2d November, 1820, one for the sum of $133,54,
payable in 6 months, and the other for $137, payable in 12
months, as his proportion of the amount of the judgment ;
which notes, when due, were paid. The witness stated that
it was a mutual settlement by the parties, and that neither
party was to look to the other for any part so agreed to be
paid by him. It was further proved that the suits against
*Keeler* and *Bartine* were delayed for a length of time by the
*defences* set up in the same ; and that an execution was issued
upon the judgment against Bartine for $1024,44. Upon this
testimony the plaintiff rested his cause. The defendant mov-
ed for a *nonsuit*, because, 1. All claim against him on the note
was barred by the statute of limitations ; 2. That notice of
non-payment of the note had not been given ; and 3. That
payment of the *one fourth* of the judgment was not a pay-
ment for the use of the defendant. The judge refused to
nonsuit the plaintiff, but reserved the questions. Cooper, one
of the firm of *Seaman & Cooper*, being called by the defend-
ant, testified that his firm stopped payment in 1814 ; that

NEW-YORK,
May, 1834.

Keeler
v.
Bartine.

the arrangement testified to by Mr. Weed was made to relieve *Bartine* from his difficulties in consequence of the judgment against him ; that *Keeler* also was embarrassed ; that Seaman & Cooper had paid their shares of the judgment according to the arrangement with Weed & Doremus ; that they had made a voluntary *assignment* of their property for the benefit of their creditors, specifying in it the note endorsed by Bartine and Keeler and Weed and Doremus, and that their creditors had accepted such assignment, and *released* them from all debts, and had received a dividend of the property assigned. That Bartine, Keeler, Weed & Doremus had executed such release. He further testified that Bartine had endorsed the note paid by Weed & Doremus solely for the *accommodation* of Seaman & Cooper, and that Bartine had not received from him or any one else the amount paid by him to Weed & Doremus, or any indemnity whatever. The *release* referred to by the witness Cooper was produced in evidence ; it bears date 14th October, 1814. By it the creditors released to Seaman & Cooper all bills, &c. and demands whatsoever which they ever had, then had, or which their executors, &c. could, should or might have, by means of any act, matter cause, or, thing, from the beginning of the world to the day of the date of the release. After the evidence was closed on the part of the defendant, the plaintiff produced in proof an instrument in writing, under the hands and seals of *Bartine & Keeler*, bearing date 22d Dec. 1815, by which, after reciting that the note of Seaman & Cooper, endorsed by them, was holden by Weed & Doremus, and that the latter was disposed to release them as endorsers, provided they, Weed & Doremus might be allowed to retain in their hands the *dividends* that were then, or might thereafter be payable upon the note to them as endorsers, they authorized Weed and Doremus to receive to their use as the holders of such note, all such *dividends* as might be coming from the estate of Seaman & Cooper, on account of such note, upon condition of such release and discharge being given ; and agreed with Weed & Doremus not to take advantage of any such dividends, or to make use of such release of the one or either of them to the advantage of the other, upon their release to Seaman & Cooper, upon receipt

of such dividends, but to permit Weed & Doremus to receive such dividends. The jury, under the charge of the judge, that the plaintiff was entitled to recover, found a verdict for him for $467,65. An application was made by the defendant to the superior court for a new trial, on a bill of exceptions presented at the trial, which was refused by the court, and a *general judgment* entered against the defendant for the amount of the verdict and costs of increase. The defendant sued out a writ of error. The cause was submitted on written arguments by

*J. Anthon*, for the plaintiff in error.

*E. B. Hall*, for defendant in error.

*By the Court*, NELSON, J. The effect of entering a *nolle prosequi* as to the first count, is not so extensive in its bearing upon the rights of the parties as is supposed by the counsel for the plaintiff in error. The only operation of it, is to strike from the record that count and all the issues joined upon it; the residue of the issues remaining to be tried, the same as if no other had been formed. It will not be doubted that the plaintiff was not originally bound to declare as he did in the first count upon the note, and hence the propriety of allowing him to abandon the count, on paying the costs to which his adversary may have been put by means of it. The case of *Hughes* v. *Moore*, 7 Cranch, 176, relied on by the counsel for the plaintiff in error, when particularly examined, is not in contradiction to this doctrine, but in confirmation of it. There is an expression used by Chief Justice Marshall, which, as a general proposition, cannot be supported; but is correct, taken in connexion with other parts of the opinion, and should be so regarded, i. e., "after this discontinuance (which was a *nolle prosequi*, as to one count,) the parties are in precisely the same situation as if all the issues, both of law and fact, which were joined upon that count, had been decided in favor of the defendant below." Suppose the count thus discontinued had been upon a note, or other contract, which was competent evidence to sustain the common counts, it is clear that the in-

VOL. XII.    15

NEW-YORK,
May, 1834.

Keeler
v.
Bartine.

NEW YORK, strument might be used for that purpose, and a recovery had
May, 1834. upon it, notwithstanding the *nolle prosequi*, as it also might if
Keeler the count remained; and yet it could not be thus used, if a ver-
v. dict had been found on the count for the defendant.    Agreea-
Bartine. bly to the above proposition, the verdict would be an extin-
guishment of it.  The defendant here suffers in no way by the
discontinuance; for all the evidence the plaintiff gave on the
trial would have been just as competent and available under
the count for money paid, if the first count had remained on
the pleadings, and not more so.    If the count had contained a
distinct cause of action, and the issue upon it had been found
for the defendant, he would have been entitled to the costs of
such issue, though the plaintiff recovered upon the whole record.
2 R. S. 617, § 26.    These costs, or all that had accrued, he
did obtain, or might have obtained, on the discontinuance.

The defendant was the first endorser, and if liable at all to
the plaintiff, who was the second and an accommodation en-
dorser, the count for money paid was the appropriate one un-
der which to charge him.

The testimony in the bill of exceptions is decisive against
the defence set up under the statute of limitations.    Soon af-
ter the note of $950 reached maturity it was taken up by the
last endorsers, Weed & Doremus, and suits were brought upon
it, and judgments recovered against each of the prior endors-
ers, *Bartine & Keeler*.    Bartine, to relieve himself from the
judgment, gave two notes, bearing date 2d November, 1820,
payable in 6 and 12 months, for $270,54, which notes were
paid at maturity.    Now there is no pretence for saying that
either of the endorsers were at any time discharged from
their liabilities growing out of their endorsements of the note
by lapse of time.    Weed & Doremus were obliged to take it
up, and they recovered a judgment against Bartine, who
could relieve himself from it only by giving his notes and
paying them.    When could he have avoided this liability by
setting up the statute of limitations?    And it is the obligation
to pay as endorser, and payment, which entitles him to call
upon the defendant Keeler, who stood behind him on the
note, and which obligation is collateral to and independent of

the principal contract by the makers. There is no foundation for saying that he paid the money in his own wrong. He was obliged to pay it by virtue of his obligation as endorser.

The mutual arrangement between all the parties, by which each individual agreed to pay one fourth of the note, or rather judgment, against Bartine, *without recourse,* I am of opinion is void as to Bartine, for the want of a consideration to support it. That a consideration is necessary is not denied. The makers of the note, Seaman & Cooper, assumed the payment of one fourth; Keeler did the same, leaving a like sum to Bartine to pay. Now l admit, if either of these parties, Seaman & Cooper, or Keeler, were not bound to pay the judgment and indemnify Bartine, the new obligation assumed would constitute a good consideration for the promise of the latter not to call upon them, or either of them, to refund his share. If they were so bound, then the arrangement was but an agreement to pay a part of their own debt, and could afford no consideration for the agreement of Bartine.

It is said that the makers of the note and Keeler were discharged by the release to Seaman & Cooper, executed by the plaintiff, with others, bearing date 14th October, 1820. If it operated to discharge the makers, no doubt it would the endorser unless his implied assent to such discharge from having signed it himself continued his obligation, for which there are some authorities. I put this case, however, upon the ground, that both upon principle and authority, the makers were not discharged by the release. At the time of the release the note was not due ; it was in the hands of the bank, or other holders who did not execute the release. They, therefore, who ever they were, when the note became due, could call upon any of the parties to it. If they called upon the makers and compelled payment, there is no pretence for saying they could have recourse to their own accommodation endorsers, which proves the existence of their liability upon it. If the holders collected the amount from the endorsers, there would seem to be no hardship in allowing them to have recourse to the makers. Aside from this, it is clear, upon adjudged cases, that the release did not operate to discharge the future contingent liability of the makers to the endorsers ; and it must

NEW-YORK,
May, 1834.

Keeler
v.
Bartine.

have been upon this ground that Weed & Doremus recovered judgment against Bartine & Keeler; for if such had been its effect, the recovery could not have been had, as Weed & Doremus also signed the deed of release. This objection would have been equally as strong against them as it now is against Bartine. The maker's liability to the plaintiff, and his right of action, accrued subsequent to the deed of release, and was not a debt or demand, or other obligation, existing at the time within the intent or meaning of that instrument; all the terms of it are fully satisfied, by construing it to operate upon existing liabilities; and without such construction, it is not perceived how a party could come in under the assignment for a dividend, which it expressly contemplates in case of every releasor. To give such an instrument any other construction, without terms more clear and explicit, would frequently be a surprise upon creditors upon whom heavy responsibilities might fall subsequent to the release not within its scope, according to their understanding. The case of *Seymour* v. *Minturn*, 17 Johns. R. 169, is very clear and decisive upon this part of the case. See also *Margetson* v. *Aitkins*, 3 Carr. & Payn, 338. 17 Johns. R. 58. 2 id. 186. If the makers were not discharged, the defendant of course was not; and the agreement by the makers and Keeler to pay, or the actual payment of a part of the judgment, was but the payment of their own debt, which they cannot set up as a consideration to give validity to the promise of the plaintiff not to have recourse to them for the money he was obliged to advance.

But it is said Keeler paid a small portion of the costs of the judgment against Bartine, for which he was not legally holden as prior endorser, and that this afforded a sufficient consideration for his promise. The position of the counsel for the plaintiff in error, that his client was not responsible for any part of these costs, I think correct. The makers were responsible, because Bartine, as to them, was an accommodation endorser. 4 Taunt. 464. 1 Gow. N. P. 113. 1 Chitty on Bills, Phil. ed. 147, 196, 415. 1 Phillip's Ev. 47. But as regarded the rights and liabilit'es of the endorsers in relation to one another, there is no difference between this note and one made and put into circulation in the usual course of business. 7 Johns.

R. 362. 15 East, 216, 222, (n.) 9 Johns. R. 131. *Simpson v. Griffen*, 16 id. 154. All of them endorsed for the accommodation of the makers, and stand in that respect upon the same footing, and without any reason for a distinction : and as between a subsequent and prior party on the note, the relation of principal and surety exists in no greater degree than in those cases where it has been determined costs are not payable. But I cannot say from the evidence in the bill of exceptions, that any costs were paid by the defendant below, nor was this ground taken on the trial. It is true he paid one fourth of the judgment, and there is reason for the inference of payment of costs ; but a fact so material should not have been left to inference, especially when this position was not taken on the trial. When the plaintiff rested, the counsel for the defendant moved for a nonsuit, on the grounds, 1. That all claim against him was barred by the statute of limitations ; 2. The want of demand upon the makers, and notice of non-payment ; and 3. That the payment of the one fourth of the debt by Bartine was not in law a payment for the use of the defendant. The last exception I admit gives to the party the right to rely here upon the agreement of non recourse ; but he is bound to show clearly and affirmatively, facts sufficient to constitute a valid and binding agreement. So far as reliance is placed upon the payment of the item of costs as a consideration, I am unable to say that fact appears. The sum paid ($270,54) did not amount to the one fourth of the principal and interest due upon the note at the time of the settlement ; and there is no evidence of any prior payments, which is enough to repel the inference to be derived from the expression used by the witness of paying one quarter of the judgment.

Some of the cases already referred to are in point to show that the defendant, though an accommodation endorser, (and if it even should be conceded that the makers were insolvent when the note was drawn) can be charged only by regular demand and notice according to mercantile usage. 7 Johns. R. 362. 15 East, 216, 222. (n). Chitty, Phil. ed. 201, 246. 3 Barn. & Ald. 619. 7 Wendell, 169. It has always appeared to me singular that the law should ever have been

thought otherwise, as the two circumstances relied on to distinguish this from the ordinary case, to wit, the endorsement for accommodation and insolvency of the maker, would seem to add cogency to the considerations in favor of strict notice of the default. The argument against the necessity of it, can be founded only upon the idea that the endorsers signed under an expectation of paying the note; but the circumstances of the case and form of the obligation repel it. In this case there is no express notice, and the plaintiff puts the case (if required) upon evidence of implied demand and notice, or of a waiver of the same. Weed and Doremus, recovered judgment against the defendant below, after contestation, and as between these parties, or privies, it might be evidence of regular demand and notice, as without proof of demand and notice there could not have been a recovery. Though the plaintiff is not a privy, as the defendant is responsible to him upon a distinct and independent contract, yet the principle has some bearing upon the case, if it is not conclusive. It is clear that a demand and notice by Weed and Doremus will enure to the benefit of the plaintiff, and any evidence tending to establish such demand and notice, is competent and effectual in this case. Chitty, Phil. ed. 228. 18 Johns. R. 327. 5 Cowen, 309. In the eye of the law, the defendant had every opportunity to contest these facts in the suit of Weed and Doremus against him, which he has here ; and proof of them here (i. e. notice of non-payment given by Weed and Doremus) would be decisive against him. Without saying for the present that the recovery of Weed and Doremus against him is conclusive upon the point, it is, we think, at least some evidence of the facts proper for the consideration of a jury. The instrument of the date of 22d December, 1815, signed by Bartine and Keeler, was also some evidence that the latter was duly charged, as it admits his liability as endorser of the note. The agreement to pay one fourth of the demand to Weed and Doremus, is strong evidence of the facts according to all the authorities, and in England would probably be conclusive. Chitty, Phil. ed. 233, 40. 2 Str. 1246. 1 Taunt. 12. 1 Selw. 256. 7 East, 231. 1 Starkie, 217. This court is perhaps more strict in regard to the effect given to the evidence

of a promise to pay the note, operating as a waiver of proof of due notice of dishonor, or laying the foundation for the presumption that notice has been given, than many of the cases upon this point in England would seem to require. The cases there are contradictory. Here there must not only be a promise to pay, but it must be with a knowledge of the laches of the holder, *Trimble* v. *Thorn*, 16 Johns. R. 152 ; and to allow part payment to have the effect, like knowledge should be required. The circumstances, however, under which the defendant in this case agreed to pay, and did pay part of the note, were such as to show conclusively that if there was no demand or notice, or any defect in the demand and notice, he must have known the fact after the litigation with Weed and Doremus.

Upon the whole after a careful examination of the facts, I cannot resist the conclusion that the judgment in the court below is correct ; on the grounds 1. That the statute of limitations has no application to the case ; 2, That the deed of release of 14th October, 1814, did not operate to discharge the future contingent liability of the makers of the note to the endorsers, and of course did not discharge the defendant ; 3. That the arrangement between the parties of the judgment against Bartine, in which Bartine agreed not to have recourse upon the makers or defendant, was inoperative for want of a consideration : 4. That the evidence was sufficient of due notice to Keeler of the dishonor of the note, or at least sufficient to be submitted to the jury. Nor am I able to perceive any hardship in the case as it regards the defendant, for beyond all question he has his remedy against the makers, and on paying the judgment of the plaintiff, will be entitled to resort to them. Being an accomodation endorser as to them, he is in every sense their surety ; and they most clearly have no ground of complaint on the score of justice. It was their debt.

Judgment affirmed.